IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Alex D. Taylor, | ) | C/A No.: 1:09-915-TLW-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Jon E. Ozmint, Director of South Carolina Department of Corrections, | ) | |
| Defendant. | ) | |

Plaintiff, who is proceeding *pro se* in this action, alleges his constitutional rights have been violated and brings this action pursuant to 28 U.S.C. § 1983. Before the court is Defendant's Motion for Summary Judgment [Entry #29]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for review by the district judge.

I.  Factual and Procedural Background

Plaintiff's complaint was filed April 4, 2008. Defendant filed his motion for summary judgment on February 22, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendant's motion. [Entry #30]. Plaintiff timely filed a response in opposition to Defendant's motion [Entry #32] on March 22, 2010.

Plaintiff's complaint alleges that Defendant, as Director of the South Carolina Department of Corrections, has violated his First Amendment rights and protections secured by the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C.A. § 2000cc-1 ("RLUIPA"). Specifically, Plaintiff alleges that the SCDC policy prohibiting all prisoners confined within the Special Management Unit ("SMU") from receiving magazines, newspapers, and books through the mail, regardless of whether they are religious, secular, or legal in nature, violates his First Amendment rights as well as Plaintiff's rights protected by the RLUIPA.

Having carefully considered the parties' submissions and the record in this case, the court recommends granting Defendant's motion for summary judgment.

II. Discussion

A. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden

of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing that there is a genuine issue for trial. The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-323.

B.  First Amendment Analysis

Although Plaintiff's complaint itself gives little information about how his First Amendment rights have been violated, Plaintiff appears to argue in his memorandum in opposition to summary judgment that an absolute ban on all "books and subscription publications by mail" generally violates his First Amendment rights. Plaintiff also argues

that the ban specifically violates the Free Exercise Clause of the First Amendment by depriving him of religious materials.

As a prison inmate, Plaintiff retains certain First Amendment rights. *Thornburgh v. Abbott*, 490 U.S. 401, 407-408 (1989). However, an inmate's constitutional rights are not unrestricted. Prisons may adopt regulations that infringe upon an inmate's constitutional rights as long as the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 87 (1987). In order to determine whether the regulation relied on by Defendant is constitutionally permissible, the court must consider four factors: (1) whether the disputed regulation is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. *Turner*, 482 U.S. at 89-90. When applying these factors, the court must "respect the determinations of prison officials." *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. *Hause v. Vaught*, 993 F.2d 1079, 1082 (4th Cir. 1993).

In *Beard v. Banks*, 548 U.S. 521 (2006), the Supreme Court recently upheld a policy similar to the SCDC's policy for inmates in the SMU. The *Beard* court concluded that a prison policy prohibiting inmates' access to newspapers, magazines, and photographs did not violate the First Amendment. The Court determined the reason for the policy, which was

to provide an incentive to promote better inmate behavior, satisfied the *Turner* standard. Likewise, here, the SCDC policy is an incentive to promote good behavior and a desire to avoid placement in the SMU. (Ward Aff. at ¶ 9).

Here, Plaintiff has alternative rights of exercising the rights in question. Pursuant to SCDC policies, Plaintiff is allowed one book or magazine from Library Services that he can trade out for another. Additionally, in accordance with the "Inmate Access to the Courts" policy, an SMU inmate may obtain up to three law books at one time from the institutional law library using a "Law Book Request" form.[1] (Ward Aff. at ¶ 19). Finally, inmates are also allowed constant access to their primary religious text, such as the Bible or Qur'an. *Id.* at ¶ 6.

Plaintiff does not dispute that a SCDC policy (policy PS-10.05) provides a method for him to request his religion be recognized and to obtain the religious text for the same. Instead, Plaintiff argues for the first time in his opposition to summary judgment that (1) his religion is Shetaut Neter; (2) he has requested his religion be recognized and inquired about receiving his religious texts; and (3) his requests have not been fulfilled. However, any complaint about the recognition of Plaintiff's religion and his rights to the religious texts for

---

[1] Plaintiff argues that the law library does not have all of the updated case law he needs. He gives examples of specific cases cited by Defendant in this matter that he was unable to obtain. The court first notes that Plaintiff has not alleged a claim for denial of court access in his complaint. Assuming, *arguendo*, Plaintiff's complaint does set forth a claim for denial of access to the courts, Plaintiff has alleged no specific injury as the law requires. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). On the contrary, Plaintiff's brief in the present case is well-researched.

the same is an alleged violation of PS-10.05, and is not properly before the court.[2] Thus, Plaintiff has not demonstrated that alternative means for exercising his religion are unavailable, as SCDC policy provides for alternative means.

The third factor under *Turner* is "the impact the accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. As the Supreme Court explained in *Beard*, the third factor is satisfied because correctional officials would otherwise not have this method of rewarding good behavior and for punishing inappropriate behavior.

*Turner* also requires an assessment of whether the presence of ready alternatives undermines the reasonableness of the policy. "*Turner* does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003). The Supreme Court described this as a "high standard" to meet. *Id.* Here, Plaintiff has suggested allowing inmates one book or subscription material at a time. Defendant argues this would detract from the incentive the policy creates for good behavior in order to be released from the SMU into the general population. As the Supreme Court has recognized, restrictions on privileges are an effective "management technique" in

---

[2] The court also notes that even if an alleged violation of PS-10.05 was before the court, Plaintiff has not alleged that Defendant Ozmint has personally been involved in any such violation, and Ozmint cannot be held liable for supervisory liability under 42 U.S.C. § 1983.

controlling "high-security prisoners who have few other privileges to lose." *Id.* at 134. Here, Plaintiff has not pointed to an alternative that accommodates his asserted right without imposing more than a *de minimus* cost to the valid penological goal.

C. RLUIPA Analysis

Plaintiff also alleges the prohibition of SMU inmates' receipt of magazines, books, and newspapers by mail violates his RLUIPA rights. Section 2000cc-1(a) of RLUIPA provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Here, Plaintiff has not shown that the SCDC policy banning inmates in the SMU from receiving books, newspapers, or magazines imposes a "substantial burden" on the exercise of their religion. Instead, as noted above, Plaintiff argues that he has not been provided with the primary religious texts of his religion, Shetaut Neter, by the chaplain pursuant to a separate SCDC policy. It logically follows from Plaintiff's argument that if he were provided with the claimed religious texts through the chaplain, Plaintiff would have no claim that the ban at issue places any burden, let alone a substantial burden, on the exercise of his religion. Therefore, the relief Plaintiff seeks is actually for an alleged violation of

another SCDC policy, which is not properly before the court,[3] and on which the court makes no recommendation or judgment. As such Plaintiff has failed to demonstrate that the prohibition of SMU inmates' receipt of magazines, books, and newspapers received by mail violates his RLUIPA rights, and his claim must be denied.

    D.    Qualified Immunity

Defendant also asserts he is entitled to qualified immunity in his individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly

---

[3] Plaintiff's complaint is specific in that he is suing Defendant over the "explicit and absolute ban on the receipt through the mail [of] all magazines, newspapers and books by prisoners confined within the Special Management Unit (SMU) of the SCDC, regardless if they are legal, secular, or religious in nature . . . ." Although Plaintiff's cause of action under the RLUIPA indicated he had some claim with regard to religion, Plaintiff's first mention that a request for his religious texts from the chaplain has not been fulfilled was in his Opposition to Summary Judgment. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendant is entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendant, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established

some theory of liability upon the part of Defendant, and therefore, the existence of a constitutional deprivation, Defendant is still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, Defendant performed the discretionary functions of his official duties in an objectively reasonable fashion. He did not transgress any statutory or constitutional rights of Plaintiff that he was aware of in the discretionary exercise of his professional judgment. Thus, to the extent the district judge finds that a constitutional violation occurred, Defendant is entitled to qualified immunity.

III.   Conclusion

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment [Entry #29] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

August 9, 2010　　　　　　　　　　　　　　　Shiva V. Hodges
Florence, South Carolina　　　　　　　　　　United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**